UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BENJAMIN OJOGWU,  Case No. 19-CV-0563 (PJS/TNL)

      Plaintiff,

v.  ORDER

RODENBURG LAW FIRM and
PORTFOLIO RECOVERY ASSOCIATES,
LLC,

      Defendants.

      Blake R. Bauer, FIELDS LAW FIRM, for plaintiff.

      Amanda Marie Lee and Clifton G. Rodenburg, RODENBURG LAW FIRM, for defendant Rodenburg Law Firm.

      M. Annie Santos and Heather K. Meyers, HINSHAW & CULBERTSON LLP, for defendant Portfolio Recovery Associates, LLC.

      Plaintiff Benjamin Ojogwu brings this action against defendants Rodenburg Law Firm ("Rodenburg") and Portfolio Recovery Associates, LLC ("Portfolio") under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  Defendants move to dismiss.  For the reasons that follow, defendants' motion is denied.

## I.  BACKGROUND

      Ojogwu allegedly owes a debt to CitiBank.  Compl. ¶ 11.  CitiBank transferred the alleged debt to Portfolio, which retained Rodenburg to collect the debt.  Compl. ¶¶ 13, 17.  Rodenburg brought a collection action against Ojogwu in Hennepin County

District Court.  In March 2017, Rodenburg notified Ojogwu that it intended to apply for a default judgment.  Compl. ¶ 17 & Ex. 1.  In June 2017, Ojogwu retained attorney Blake Bauer, who sent a letter of representation to Rodenburg directing that all future correspondence to Ojogwu be sent through Bauer.  Compl. ¶¶ 18-19 & Ex. 2.  Rodenburg acknowledged receiving the letter.  Compl. ¶ 20 & Ex. 3.

About a month later, Rodenburg sent legal correspondence directly to Ojogwu.  Compl. ¶ 21 & Ex. 4.  In response, Bauer drafted and forwarded a proposed complaint alleging that Rodenburg had violated the FDCPA when it directly contacted Ojogwu.  Compl. ¶¶ 22-23 & Ex. 5.  The parties resolved that dispute.  Compl. ¶ 24.

About a year later, on July 17, 2018, Rodenburg again sent legal correspondence directly to Ojogwu.  This time, the correspondence consisted of a garnishment summons, a non-earnings disclosure worksheet, an exemption notice, and an accompanying cover letter.  Compl. ¶ 25 & Ex. 6.  On the same date, Rodenburg sent Bauer an affidavit of increased costs and a certificate of service relating to the case against Ojogwu.  Compl. ¶ 27 & Ex. 7.  In response, Ojogwu filed this action against Rodenburg and Portfolio, alleging that they violated the FDCPA when they sent the garnishment summons and associated paperwork directly to Ojogwu.

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

### B. 15 U.S.C. § 1692c(a)(2)

Ojogwu alleges that defendants violated 15 U.S.C. § 1692c(a)(2) when they sent the garnishment summons and associated paperwork directly to him instead of to his attorney. Section 1692c(a)(2) provides in relevant part:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
>
> . . . .
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt . . . .

Defendants make three arguments in support of dismissing Ojogwu's claim: (1) they had the "express permission of a court of competent jurisdiction" to contact Ojogwu directly and therefore did not act unlawfully; (2) two provisions of the FDCPA—§ 1692c(c)(2) and (3)—permitted them to contact Ojogwu directly; and (3) they are required by Minnesota law to send a garnishment summons directly to a debtor and the FDCPA does not preempt that requirement. The Court considers each argument in turn.

1. Express Permission of a Court

Defendants argue that when the state court entered judgment in their favor—and thereby conferred on them the status of judgment creditors—the state court gave them express permission to use all creditors' remedies, including garnishment. Defendants further argue that, because Minn. Stat. § 571.72, subd. 4 requires a judgment creditor to serve a garnishment summons and related papers directly on a judgment debtor,[1] the state court gave them express permission to serve Ojogwu directly.

---

[1]Minn. Stat. § 571.72, subd. 4 provides:

> A copy of the garnishment summons and copies of all other papers served on the garnishee must be served by mail at the last known mailing address of the debtor not later than five days after the service is made upon the garnishee.

The Court disagrees. Section 1692c(a) permits a debt collector to communicate directly with a consumer known to be represented by a lawyer only with "the *express* permission of a court." (Emphasis added.) "Express" does not mean "implied." "[T]he plain and ordinary meaning of the term 'express' means directly stated or written, and is meant to distinguish situations where a message is implied or left to inference." *Grinnell Mut. Reinsurance Co. v. Villanueva*, 798 F.3d 1146, 1148 (8th Cir. 2015). Thus, a court does not give "express" permission to a debt collector to contact a consumer directly unless the court issues an order or other document that explicitly grants that permission—i.e., that actually says something about contacting the debtor.

Defendants do not, and cannot, point to any such court order. Instead, they point to a *statute*—Minn. Stat. § 571.72, subd. 4, which (as noted) requires that a garnishment summons and related papers be served directly on the judgment debtor. The authorization found in that statute is undoubtedly "express," but, unfortunately for defendants, it is not the authorization of "a court." Instead, it is the authorization of a legislature.[2] As aptly stated in *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*,

---

[2]That there was no permission to contact Ojogwu that was both "express" and granted by a "court" is evident from the fact that, if the Minnesota Legislature repealed § 571.72, defendants would no longer be able to point to any source of express permission to contact Ojogwu directly. Yet the language of the *court's* judgment would not change at all. Obviously, then, any "express permission" came from the legislature, not the court.

-5-

> A court issues a direct or express statement in a judicial opinion or order. In contrast, a state law connotes the express permission of the legislative body that wrote the law. Interpreting "express permission of a court" to mean "express permission" in a law . . . fails to afford "court" its plain and ordinary meaning.

911 F. Supp. 2d 1, 70 (D. Mass. 2012), *amended by* 969 F. Supp. 2d 74 (D. Mass. 2013), *rev'd in part on other grounds*, 775 F.3d 109 (1st Cir. 2014).

As *McDermott* also pointed out, Congress could have—but did not—enact a broader exception that would authorize a debt collector to directly communicate with a represented consumer when otherwise permitted by law. *Id.* at 70-71 (contrasting § 1692c(a)(2) with § 1692c(b), which permits communication about a debt to a consumer reporting agency "if otherwise permitted by law"). Indeed, § 1692c(b), which governs communications with third parties, explicitly allows such communication with "the express permission of a court of competent jurisdiction, *or* as reasonably necessary to effectuate a postjudgment judicial remedy . . . ." 15 U.S.C. § 1692c(b) (emphasis added). The inclusion of both of these exceptions strongly indicates that "express permission of a court" cannot be stretched to encompass permission that appears in a statute rather than a court order.

As § 1692c(b) demonstrates, Congress knew how to craft an exception that would permit direct contact under the circumstances of this case. But Congress chose not to include such an exception in § 1692c(a). Instead, Congress included only the more

limited exception that requires "the express permission of a court." If these words are to have meaning, then defendants could not contact Ojogwu directly unless a court order explicitly gave them permission to do so. Because no such order was entered by the court, the "express permission" exception does not apply.[3]

In arguing to the contrary, defendants rely on several cases in which courts have held that *court rules* permitting service directly on a debtor provide the "express permission of a court." *See, e.g.*, *Holcomb v. Freedman Anselmo Lindberg, LLC*, 900 F.3d 990 (7th Cir. 2018); *see also Bell v. Portfolio Recovery Assocs., LLC*, No. 18-1027 (PAM/TNL), 2018 WL 4539699, at *2 (D. Minn. Sept. 21, 2018) (because Minn. R. Civ. P. 4.03 authorizes service of a summons and complaint directly on a litigant, such service did not violate § 1692c(a)). Those cases are distinguishable, however, as they address express permission that appears in a rule promulgated by a court rather than in a statute promulgated by a legislature. *See Holcomb*, 900 F.3d at 992-93 (a court rule requiring direct service on a party constitutes the court's permission to serve the party directly). Here, defendants do not contend that a court rule either required or authorized them to serve the garnishment summons directly on Ojogwu. The Court

---

[3]The Court respectfully disagrees with courts that have held otherwise. *See, e.g.*, *Resler v. Messerli & Kramer, P.A.*, No. 02-2510 (PAM/RLE), 2003 WL 193498, at *4 (D. Minn. Jan. 23, 2003) ("[T]he state court's default judgment was in effect that court's permission to follow the collection procedures outlined in Minnesota law, including service of the levy directly on the judgment debtor.").

therefore rejects defendants' argument that the default judgment that they obtained constituted the "express permission of a court" to contact Ojogwu directly.

2. Section 1692c(c)(2) and (3)

Defendants next argue that serving Ojogwu directly (rather than through his attorney) was authorized by § 1692c(c)(2) and (3), which provide as follows:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> . . . .
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

Defendants argue that the garnishment summons constitutes a communication "notify[ing] the consumer that the debt collector. . . may invoke specified remedies" (§ 1692c(c)(2)) or "intends to invoke a specified remedy" (§ 1692c(c)(3)). As a result, defendants argue, § 1692c(c)(2) and (3) authorized them to send the garnishment summons directly to Ojogwu.

The problem with defendants' argument is that they are not accused of violating § 1692c(c), the provision to which those exceptions apply. Instead, they are accused of violating a different subsection—§ 1692c(a)(2). Section 1692c(a)(2) prohibits one kind of conduct—contacting a represented consumer directly—and enumerates certain exceptions to that prohibition. Section 1692c(c) prohibits a different kind of conduct—contacting a consumer in any way after receiving a qualifying written notification—and enumerates a separate set of exceptions to that prohibition.[4] Each subsection is self-contained and the prohibitions in each are triggered by different conduct. This structure, by itself, indicates that the exceptions in each subsection apply only within that subsection. *See Crouch v. J.J. Marshall & Assocs., Inc.*, No. 1:07-CV-477, 2007 WL 3173975, at *3 (W.D. Mich. Oct. 26, 2007) ("Defendant would have this Court read §§ 1692c(c)(2) and (3) as exceptions to § 1692c(a). The text of the statute does not require such a conclusion. Subsections (a) and (c) are independent prohibitions on communication, triggered by separate and distinct conditions.").

Another serious problem with defendants' interpretation is that applying the exceptions found in § 1692c(c) to the prohibition found in § 1692c(a) would wipe out the greater part of the protection afforded to consumers by § 1692c(a)(2). Again, § 1692c(c)

---

[4]Defendants are correct that a garnishment summons qualifies for the exceptions set forth in § 1692c(c)(2) and (3). *See Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757, 762-63 (8th Cir. 2018) (recognizing that a garnishment summons qualifies for the exception under § 1692c(c)(2)).

prohibits a debt collector from contacting a consumer at all once the consumer has provided the requisite written notice. Read literally, § 1692c(c) would prevent a debt collector from bringing a legal action to collect a debt. To prevent such an outcome, the Supreme Court has indicated that the exceptions in subsections (2) and (3) should generally be read broadly enough to permit the communication of "ordinary court-related document[s]" so that § 1692c(c) does not "empower[] a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995).

Importing this exception for "ordinary court-related document[s]" into § 1692c(a) would largely defeat the purpose of § 1692c(a) as it would permit a debt collector to serve many, if not all, litigation-related documents directly on a consumer even when the consumer is represented by an attorney. This is plainly not what Congress intended. Indeed, it would turn § 1692c(a)(2) on its head, as a debt collector would be able to communicate directly with the consumer (bypassing the consumer's attorney) *during litigation*—the very context in which the consumer is most likely to be represented by an attorney and need that attorney's advice. The more natural reading of the statute—in which § 1692c(c)(2) and (3) apply only to the prohibition found in § 1692c(c), and not to the prohibition found in § 1692c(a)—does not produce an absurd

result; it simply requires a debt collector that seeks to invoke a specified remedy against a consumer to communicate with that consumer through his or her attorney. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 600 (2010) ("To the extent the FDCPA imposes some constraints on a lawyer's advocacy on behalf of a client, it is hardly unique in our law.").

Defendants point to several cases holding that the exceptions in § 1692c(c) permit direct communication with a consumer when required by state law despite the prohibition in § 1692c(a)(2). *See, e.g., Castillo v. Zucker, Goldberg & Ackerman, LLC*, No. 14-6956, 2015 WL 1268308, at *3-4 (D.N.J. Mar. 18, 2015). The Court is not persuaded by the reasoning of these cases, which rely on the general proposition that the FDCPA should be interpreted to preserve creditors' remedies. *Id.* at *4-5. As discussed above, the Court's interpretation of the FDCPA does not deprive a single creditor of a single remedy; it simply requires that a debt collector communicate with a represented consumer through his or her attorney.[5] By contrast, the cases on which defendants rely are inconsistent with the structure of the statute and create an absurd result: forbidding a debt collector to communicate directly with a consumer who is

---

[5]It appears to the Court that *Castillo* and similar cases are animated by a concern that, to the extent state law requires direct communication with a consumer in order to invoke a particular remedy, § 1692c(a)'s prohibition of such direct contact would preclude debt collectors from invoking that remedy. The short answer to this concern is that, as discussed below, the FDCPA expressly preempts conflicting state laws—an issue that these courts do not address.

represented by counsel except *during litigation*, when direct communication with a represented consumer is most problematic. *Cf.* Minn. R. Prof. Conduct 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter . . . ."). The Court therefore rejects defendants' argument that § 1692c(c)(2) and (3) permitted them to contact Ojogwu directly.

### 3. Preemption

Finally, defendants argue that the FDCPA supplements, rather than displaces, Minn. Stat. § 571.72, subd. 4, which (as noted above) required defendants to serve the garnishment summons and related papers directly on Ojogwu. Again, the Court disagrees.

The FDCPA contains an express preemption provision, which states:

> This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

15 U.S.C. § 1692n. Defendants argue that, because § 571.72 requires service of a garnishment summons directly on the consumer, the protection that it affords to

consumers is greater than the protection afforded by the FDCPA, and therefore § 571.72 is not preempted.

Defendants' argument misconstrues the nature of the preemption inquiry. The question is not whether, as an original matter, the type of protection afforded by a particular provision of state law (in this case, the requirement of service of a garnishment summons directly on a debtor) is more consumer-friendly than the type of protection afforded by a particular provision of the FDCPA (in this case, the prohibition on direct contact with represented consumers). Such an interpretive framework would leave any provision of the FDCPA that conflicts with a provision of state law open to question and would allow courts to substitute their policy judgment for that of Congress. As another court put it, this interpretation "relies on an untenable definition of 'greater' which contradicts the plain language of the FDCPA." *Chung v. Shapiro & Denardo, LLC*, No. 14-6899, 2015 WL 3746332, at *3 (D.N.J. June 15, 2015).

Instead, the "simpler and more logical interpretation" of § 1692n is that "[s]tate law may impose additional restrictions, but not contrary ones." *Id.* State law could, for example, impose additional restrictions on contacting consumers directly. Or state law could impose additional penalties on defendants who contact consumers directly in violation of the FDCPA. What state law cannot do is permit conduct that the FDCPA prohibits. Here, state law requires direct communication with a debtor in a situation in

which the FDCPA forbids it. Because the two requirements are in direct conflict, state law must give way.⁶ Defendants' motion to dismiss is therefore denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendants' motion to dismiss [ECF No. 10] is DENIED.

Dated: November 19, 2019        s/Patrick J. Schiltz
                                                      Patrick J. Schiltz
                                                      United States District Judge

---

⁶Presumably to avoid putting the Court in the position of having to hold that the FDCPA preempts Minn. Stat. § 571.72, subd. 4, Ojogwu suggests that § 571.72 can be reconciled with § 1692c(a)(2). Specifically, citing *Washington v. Portfolio Recovery Associates, LLC*, 211 F. Supp. 3d 1041 (N.D. Ill. 2016), Ojogwu suggests that the language in Minn. Stat. § 571.72 requiring service at the debtor's "last known mailing address" could be interpreted to require service at the address of a represented party's lawyer. The Court finds this interpretation to be implausible. Whatever the meaning of § 571.72, however, the fact remains that § 1692c(a)(2) clearly prohibited defendants from sending the garnishment summons directly to Ojogwu.